Matthew L. Rollin (SBN 332631)
**SRIPLAW, P.A.**
8730 Wilshire Boulevard
Suite 350
Beverly Hills, California 90211
323.452.5600 – Telephone
561.404.4353 – Facsimile
Matthew.rollin@sriplaw.com

Counsel for Plaintiffs
Global Weather Productions, LLC, Aaron James Jayjack, Maxwell Olson and Reed Timmer

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL WEATHER PRODUCTIONS, LLC, AARON JAMES JAYJACK, MAXWELL OLSON and REED TIMMER,<br><br>Plaintiffs,<br><br>v.<br><br>MAHMUT DOGAN and AL JAZEERA MEDIA NETWORK,<br><br>Defendants. | CASE NO.: 3:26-cv-00489<br><br>**COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT AND FALSE COPYRIGHT MANAGEMENT INFORMATION**<br><br>**(INJUNCTIVE RELIEF DEMANDED)** |

GLOBAL WEATHER PRODUCTIONS, LLC, AARON JAMES JAYJACK, MAXWELL OLSON and REED TIMMER ("Plaintiffs") by and through their undersigned counsel, hereby bring this Complaint against Defendants MAHMUT DOGAN and AL JAZEERA MEDIA NETWORK (collectively referred to herein as "Defendants") who operate the YOUTUBE CHANNEL named ALJAZEERA ARABIC, for damages and injunctive relief, and in support thereof states as follows:

## SUMMARY OF THE ACTION

1.  Plaintiffs bring this action for violations of exclusive rights under the Copyright Act, 17 U.S.C. § 106, to reproduce, publicly perform, and distribute Plaintiffs' original copyrighted works of authorship and for addition of false copyright management information in violation of 17 U.S.C. § 1202.

**JURISDICTION AND VENUE**

2. This is an action arising under the Copyright Act, 17 U.S.C. §§ 501, 1202.

3. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

4. Defendants are subject to personal jurisdiction in California and jurisdiction is proper in this district court.

5. Jurisdiction is proper in California because Defendants are transacting business within California by using the YouTube platform that Google operates from within California to (a) commit acts of infringement, (b) profit from acts of infringement, (c) commit CMI violations, and (d) profit from CMI violations.

6. Jurisdiction is proper in California because Defendants committed tortious acts within California on the YouTube platform that Google operates in California. Defendants: (a) committed acts of infringement alleged below in California on the YouTube platform, and (b) committed CMI falsification violations alleged below in California on the YouTube platform.

7. Jurisdiction is proper in California because Defendants caused Plaintiffs to suffer a tortious injury in this state caused by an act or omission outside this state. The acts or omissions that the Defendants committed outside the state consisted of: (a) downloading Plaintiffs' copyrighted videos, (b) copying Plaintiffs' copyrighted videos, (c) editing and creating derivative works of Plaintiffs' copyrighted videos, and (d) removing and falsifying Plaintiffs' copyright management information. All these acts caused Plaintiffs to suffer tortious injury in California because after committing these acts, Defendants then uploaded the infringing videos to YouTube and displayed/performed the infringing videos on the YouTube platform with false CMI. Defendants then profited from their acts by receiving advertising revenue from infringing videos, and damaged Plaintiffs by depriving Plaintiffs of the revenue that rightfully belonged to Plaintiffs and not Defendant.

8. Jurisdiction is also proper in this district court pursuant to 17 U.S.C. § 512(g)(3)(D) because Defendants consented to the jurisdiction of this federal district court when they provided the

SRIPLAW
CALIFORNIA ◆ FLORIDA ◆ GEORGIA ◆ INDIANA ◆ NEW YORK ◆ TENNESSEE ◆ TEXAS

counternotification attached hereto in **Exhibit 5**, because the service provider provided with the counternotification can be found in this judicial district, namely YouTube.

9. Defendants have sufficient minimum contacts with the state of California, there is a direct connection between the Defendants' tortious acts and the state of California, and the exercise of personal jurisdiction over the Defendants complies with the Due Process Clause of the United States Constitution.

10. Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

11. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) and 17 U.S.C. § 512(g)(3)(D) because the events giving rise to the claims occurred in this district, Defendants engaged in infringement in this district, Defendants are subject to personal jurisdiction in this district, and because Defendants consented to this venue when Defendants provided the counternotification referred to herein because the service provider provided with the counternotification can be found in this judicial district.

12. Defendants may be served by and through the email address listed in its counternotice and through YOUTUBE that acted as their agent and Defendants agreed to accept service of process through YOUTUBE from Plaintiffs or an agent of Plaintiffs in the counternotification pursuant to 17 U.S.C. § 512(g)(3)(D).

## **PLAINTIFFS**

13. GLOBAL WEATHER PRODUCTIONS, LLC ("GWP") is a professional videography company. GWP manages and stores Clement's collection of copyrighted works, overseeing the distribution of his creative pieces to various individuals and organizations. This arrangement allows for centralized control and administration of Clement's intellectual property, streamlining the licensing and distribution of his works across different media platforms.

14. GWP's videos of extreme weather events are frequently copied, downloaded, and reuploaded by infringers. GWP's videos are a popular and frequent source of footage of weather

events that cannot be obtained elsewhere. This makes GWP a frequent target for infringers and pirates.

15. GWP is a Wyoming Limited Liability Company. GWP was founded May 31, 2023. Michael Brandon Clement is the sole propriotor/owner of GWP.

    a. MICHAEL BRANDON CLEMENT ("Clement") is an award-winning videographer and drone pilot that has licensed content to hundreds of media outlets globally. He has been documenting extreme weather for almost 30 years. Clement has been featured on Netflix, HBO, and many other documentaries. His company WxChasing has a well-established brand and large following on social media. His content has amassed Billions of views. Clement has assisted with first responders, charities and regularly provides ground truth to the National Weather Service and major media outlets relaying vital information to the public.

16. AARON JAMES JAYJACK ("Jayjack") is a highly experienced storm chaser and videographer who has traveled across multiple countries in pursuit of extreme weather. He is also a freelance on camera multimedia journalist for media outlets and has a large social media presence. His content has been seen hundreds of millions of times from hurricanes to tornadoes. Aaron has also assisted with search and rescue and warning coordination with the National Weather Service as well as bringing awareness to life threatening public safety threats.

17. MAXWELL OLSON ("Olson") is a storm chaser, videographer and photographer who has captured some of the most recognizable storm images on the planet. He developed a proprietary storm camera that captured what is widely considered the best storm surge video ever recorded. Olson has assisted directly with disaster victims and in first response after tornadoes. His content has been licensed by many news outlets globally and he has been featured in numerous documentaries including "The Price of Paradise" on Amazon. Olson as had a lifelong passion for severe weather, by kindergarten, the Tornado Video Classics VHS tapes became more watched than cartoons and every birthday consisted of dozens of new weather books. Growing up in Colorado allowed for a wide variety of weather to be experienced, from blizzards to hail storms and occasionally landspout tornadoes, it was a perfect environment to drive the ever-growing passion.

Olson went on his first storm chasing trip to the plains in 2007 and has returned every year since to document the most intense weather mother nature has to offer. He also enjoys creating short documentaries along the way and has developed a successful YouTube following over the years. With nearly 250 tornadoes and 10 hurricanes under his belt, Olson can't be more thrilled to bring his years of experience to the ETT family this chase season.

18. REED TIMMER ("Timmer") is a meteorologist with a PHD and famous storm chaser. Timmer was featured in "Storm Chasers" television show on Discovery Channel and has worked with local, national and international media for decades. His live streams of weather events have undoubtedly saved many lives by providing outstanding coverage in real time. Timmer has one of the largest and most valuable extreme weather libraries in the world and has traveled to many countries to document storms. Timmer also has a very large social media presence with several million followers/subscribers and supporters that help finance his endeavors. Timmer has a long history of rescuing people from tornado damage to floods to blizzards, and is also the only person to ever shoot a rocket into a tornado and capture extremely rare data from inside of a tornado. Having intercepted over 1000 tornadoes and a dozen powerful hurricanes since he started chasing 20 years ago, Reed Timmer is well-known as the most successful and extreme storm chaser in the world, and is one of the few people in existence to document both an F5 tornado, and the most devastating hurricane in U.S. history (Hurricane Katrina).

19. Plaintiffs' videos of extreme weather events are frequently copied, downloaded, and reuploaded by infringers. Plaintiffs are popular and frequent sources of footage of weather events that cannot be obtained elsewhere. This makes Plaintiffs frequent targets for infringers and pirates.

20. Plaintiffs operate popular and valuable YouTube channels on the YouTube platform.

21. Plaintiffs' YouTube channels are viewed by substantial numbers of California residents who also view advertising placed on the videos on those channels by YouTube.

22. When infringement occurs to Plaintiffs' copyrighted Works, Plaintiffs are injured and damaged in California. When someone infringes on Plaintiffs' copyright like Defendants, Plaintiffs lose out on potential sales or licensing revenue to other California businesses. When Plaintiffs' copyrighted work is infringed upon and widely distributed on YouTube without Plaintiffs'

permission like Defendants did, it damages Plaintiffs' reputation as a professional source of valuable extreme weather video content and makes it more difficult for Plaintiffs to negotiate valuable licenses from clients and potential clients in California in the future.

## YOUTUBE AND GOOGLE LLC

23. YouTube is a video-sharing platform where users can watch, upload, and share videos. It is one of the most popular websites in the world, with over 2 billion active users.

24. Google LLC owns YouTube.

25. YouTube is headquartered in this judicial district.

26. YouTube's main business is advertising. It generates revenue by selling advertising space on its website and mobile apps. Advertisers can target their ads to specific demographics, interests, and even keywords. This allows them to reach their target audience with a high degree of accuracy. YouTube also earns revenue from its YouTube Premium subscription service. YouTube Premium members can watch videos without ads, download videos for offline viewing, and access YouTube Music Premium. In addition to advertising and subscriptions, YouTube also generates revenue from other sources, such as channel memberships.

27. YouTube is a very profitable business. In 2021, it generated $28.8 billion in revenue and $20.6 billion in profit. Some of the factors that have contributed to YouTube's success are:

    a. The large number of users: YouTube has over 2 billion active users worldwide.

    b. The high level of engagement: Users watch an average of 1 hour and 20 minutes of YouTube videos per day.

    c. The wide variety of content: YouTube offers a wide variety of content, from music videos to educational tutorials to funny cat videos.

    d. The ease of use: YouTube is easy to use and navigate.

    e. The monetization opportunities: YouTube offers a variety of ways for creators to monetize their content, such as through advertising, channel memberships, and Super Chat.

## DEFENDANTS

28. MAHMUT DOGAN and AL JAZEERA MEDIA NETWORK operate the YOUTUBE CHANNEL named ALJAZEERA ARABIC.

29. It is believed that Mahmut Dogan is an employee of Al Jazeera Media Network.

30. Mahmut Dogan submitted the counternotice in response to Plaintiffs' takedown notices. *See* **Exhibit 5**.

31. Defendants copied and downloaded Plaintiffs' copyrighted Works from YouTube.

32. After Defendants downloaded Plaintiffs' Works, they edited the Works, removed Plaintiffs' copyright management information, and then uploaded infringing versions of Plaintiffs' Works to YouTube.

33. Defendants copied Plaintiffs' Works in order to advertise, market, and promote their YouTube channel, grow their YouTube channel subscriber base, earn money from advertising to their YouTube subscribers, and engage in other money-making business activities using Plaintiffs' copyrighted media content.

34. Defendants committed the violations alleged in connection with Defendants' businesses for purposes of advertising to the public, including YouTube viewers in California, in the course and scope of the Defendants' business.

35. The YouTube and Google AdSense terms of service prohibit the Defendants from engaging in the actions alleged herein. Specifically, the Defendants agreed (1) they are not allowed to upload content that includes third-party intellectual property (such as copyrighted material) unless with permission from that party or are otherwise legally entitled to do so; (2) they are responsible for the content uploaded to YouTube, and may be liable for any copyright infringement claims that arise from your content; (3) YouTube may remove or disable access to any content that it believes infringes on someone else's copyright.

36. Attached hereto as **Exhibit 1** is a list showing the Defendants' links to its channel, the number of subscribers, the number of videos, and the number of views for the Defendants' most popular videos, and the Plaintiffs' Works that are the subject of this action.

37. The Defendants' YouTube channel is extremely popular and valuable.

38. The Defendants' YouTube channel earns significant revenue from the performance and display of pirated video content.

39. The Defendants monetized the videos it stole from Plaintiffs. Monetizing videos on YouTube involves enabling advertisements to be displayed on your videos, which allows you to earn money through the YouTube Partner Program. The process works like this:

a. Eligibility: To monetize your videos, you need to meet certain eligibility criteria set by YouTube. You have to have at least 1,000 subscribers on your channel and a total of 4,000 watch hours in the past 12 months.

b. Joining the YouTube Partner Program: Once you meet the eligibility requirements, you can apply to join the YouTube Partner Program (YPP). This program allows you to monetize your videos by enabling ads on them. If your application is approved, you gain access to various monetization features.

c. Ad Formats: YouTube offers different ad formats that can appear on your videos, including pre-roll ads (shown before your video starts), mid-roll ads (shown during longer videos), and display ads (overlayed on the video or beside it). The specific types of ads displayed on your videos may depend on factors like the viewer's location and the advertiser's targeting preferences.

d. Revenue Sharing: When ads are displayed on your videos, you earn a portion of the revenue generated by those ads. The exact revenue split varies, but generally, creators receive around 55% of the ad revenue, while YouTube retains the remaining 45%. The revenue is based on factors such as the number of ad impressions, viewer engagement, and the advertisers' bidding.

e. AdSense Account: To receive payments for your YouTube earnings, you need to have an AdSense account linked to your YouTube channel. AdSense is a program by Google that allows publishers (in this case, YouTube creators) to earn money from ads. Once your AdSense account is set up and linked to your YouTube channel, you can manage your earnings and payment settings.

      f.     Payment Threshold: YouTube pays creators once they reach a payment threshold, which is typically $100. Once your earnings exceed this threshold, you become eligible for payment. YouTube offers various payment methods, such as direct deposit or wire transfer, depending on your country.

      g.     Other Revenue Streams: While ad revenue is a significant way to monetize your YouTube channel, creators often explore other revenue streams as well. These can include brand partnerships, sponsorships, merchandise sales, crowdfunding, and more.

40. Defendants had access to and downloaded Plaintiffs' copyrighted Works hosted by YouTube from Plaintiffs' YouTube channels or Facebook pages online.

41. Once downloaded, Defendants edited the pirated videos to remove or crop out Plaintiffs' proprietary watermarks and metadata. After editing the pirated videos, Defendants combined the Plaintiffs' videos with other video content that they either stole from others or created themselves and then reupload the resulting video to their YouTube channel and enabled advertising on them to earn monetization revenue.

## THE COPYRIGHTED WORKS AT ISSUE

42. The authors of the Works at issue are listed in **Exhibit 1,** along with the URLs where the Works can be found online.

43. The Works at issue in this case are registered with the Register of Copyrights pursuant to 17 U.S.C. § 411(a). Copies of the Registration Certificates are attached hereto as **Exhibit 3**.

44. At all relevant times, Plaintiffs were the exclusive agents of the Works at issue in this case.

## INFRINGEMENT BY DEFENDANTS

45. Defendants have never been licensed to use the Works at issue in this action for any purpose.

46. On a date after the Works listed in **Exhibit 1** at issue in this action were created, but prior to the filing of this action, Defendants copied the Works and removed Plaintiffs' copyright management information from the Works.

9

COMPLAINT FOR INTELLECTUAL PROPERTY INFRINGEMENT                 CASE NO.: 3:26-cv-00489

47. Defendants copied the Works, publicly performed the Works, and made further copies and distributed the Works on the internet without Plaintiffs' or the authors' permission, and without Plaintiffs' copyright management information.

48. Prior to the filing of this action, on a date after the Works were registered, Plaintiffs discovered the unauthorized use of the Works by Defendants.

49. Plaintiffs notified YouTube and Defendants of the allegations set forth herein in DMCA notices. Attached hereto as **Exhibit 4** are the Takedown notices.

## COPYRIGHT MANAGEMENT VIOLATIONS BY AL JAZEERA

50. Defendants have never been authorized to add their copyright management information e.g., the Al Jazeera watermark/logo to Plaintiffs' Works at issue in this action for any purpose.

51. On a date after the Works listed in **Exhibit 1** at issue in this action were created, but prior to the filing of this action, Defendants copied the Works and added the Al Jazeera watermark/logo to Plaintiffs' Works.

52. Defendants copied the Works, publicly performed the Works, and made further copies and distributed the Works on the internet without Plaintiffs' or the authors' permission.

53. Specifically, References 3, 5 and 7 listed on **Exbibit 1** contain Al Jazeera's watermark/logo without indication or attribution to the original owner of the copyrighted Works. *See* **Exhibit 2.**

54. Plaintiffs allege that Defendants added its watermark/logo indicating that it was the owner of the Works at issue.

## COUNT I
## COPYRIGHT INFRINGEMENT

55. Plaintiffs incorporate the allegations of paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. Plaintiffs own valid copyrights in the Works at issue listed on **Exhibit 1.**

57. The Works at issue in this case were registered with the Register of Copyrights pursuant to 17 U.S.C. § 411(a), as shown in **Exhibit 3**.

58. Defendants copied, displayed, and distributed the Works at issue in this case and made derivatives of the Works without Plaintiffs' authorization in violation of 17 U.S.C. § 501. Screenshots of the unauthorized uses are attached hereto as **Exhibit 2**.

59. Defendants profited from the monetization of Plaintiffs' copyrighted content by placing advertising on the Plaintiffs' Works and those profits rightfully belong to Plaintiffs.

60. Plaintiffs have been damaged.

61. The harm caused to Plaintiffs is irreparable.

## COUNT II
## FALSIFICATION OF COPYRIGHT MANAGEMENT INFORMATION

62. Plaintiffs incorporate the allegations of paragraphs 1 through 54 of this Complaint as if fully set forth herein.

63. Defendants knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provided copyright management information that is false.

64. References 3, 5, and 7 contain Al Jazeera's watermark/logo without indication or attribution to the original owner of the copyrighted Works. *See* **Exhibit 2.**

65. By uploading content to YouTube, Defendants declared that they had the necessary rights or permissions to distribute and share that content.

66. Defendants' YouTube channel provided identifying information for Defendants that was copyright management information that is falsely claimed ownership or rights in the Works displayed there that was false and provided to induce, enable, facilitate, or conceal infringement of Plaintiffs' Works in violation of 17 U.S.C. § 1202(a).

67. Defendants caused, directed, and authorized others to commit these acts knowing or having reasonable grounds to know that they will induce, enable, facilitate, or conceal infringement of Plaintiffs' rights in the Works at issue in this action protected under the Copyright Act.

68. Plaintiffs have been damaged.

69. The harm caused to Plaintiffs has been irreparable.

WHEREFORE, Plaintiffs pray for judgment against the Defendants that:

a. Defendants, their officers, agents, servants, employees, affiliated entities, and all of those in active concert with them, be preliminarily and permanently enjoined from committing the acts alleged herein in violation of 17 U.S.C. §§ 501, 1203;

b. Defendants be required to pay Plaintiffs' actual damages and Defendants' profits attributable to the infringement, or, at Plaintiffs' election, statutory damages, as provided in 17 U.S.C. §§ 504, and 1203;

c. Plaintiffs be awarded their attorneys' fees and costs of suit under the applicable statutes sued upon;

d. Plaintiffs be awarded pre- and post-judgment interest; and

e. Plaintiffs be awarded such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

DATED:  January 16, 2026                    Respectfully submitted,

*/s/ Matthew L. Rollin*
MATTHEW L. ROLLIN
**SRIPLAW, P.A.**
*Counsel for Plaintiff Global Weather Productions, LLC, Aaron James Jayjack, Maxwell Olson and Reed Timmer*